IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
CIVIL DIVISION
CASE NO.:

TOORAK CAPITAL PARTNERS LLC

       Plaintiff,

vs.

ALEX PAVLOVSKY, MIAMI HAVANA
DEVELOPMENT LLC, MIAMI DADE
COUNTY, FLORIDA AND UNKNOWN
TENANT IN POSSESSION OF THE
SUBJECT PROPERTY,

       Defendants.

## VERIFIED COMPLAINT

       TOORAK CAPITAL PARTNERS LLC (hereinafter referred to as the "Plaintiff"), sues
ALEX PAVLOVSKY, MIAMI HAVANA DEVELOPMENT LLC, MIAMI DADE COUNTY,
FLORIDA AND UNKNOWN TENANT IN POSSESSION OF THE SUBJECT PROPERTY,
(hereinafter referred to as "Defendant(s)"), and alleges:

## JURISDICTION, PARTIES AND VENUE

1.     This is an action for Foreclosure of real property and for damages in excess of $15,000
exclusive of interest, costs, and attorney's fees.

2.     Defendant, ALEX PAVLOVSKY, is an individual and is otherwise sui juris.

3.     Defendant, MIAMI HAVANA DEVELOPMENT LLC, is a Florida corporation.

4.     Defendant, MIAMI DADE COUNTY, FLORIDA, is a Florida corporation.

5.     Defendant, UNKNOWN TENANT IN POSSESSION OF THE SUBJECT PROPERTY, is
an individual and is otherwise sui juris.

## GENERAL ALLEGATIONS

6.     On or about June 1, 2021, Miami Havana Development LLC executed and delivered a
promissory note (the "Note") to Realty Capital Finance LLC and Miami Havana Development

23FL274-0006

LLC executed a mortgage securing payment of the Note (the "Mortgage"). The Mortgage was recorded on June 18, 2021 in the Official Records Book 32572, Page 3754, of the Public Records of Miami-Dade County, Florida and encumbered the property described in the Mortgage ("the Property"). A copy of the note, mortgage and commercial guaranty are attached hereto and made a part hereof and identified in sequential order as listed starting with Exhibit "A". Hereinafter, the note and mortgage are referred to collectively as the "loan documents."

7.     Plaintiff is the owner and holder of the original note secured by the mortgage. Plaintiff is entitled to enforce the note and mortgage pursuant to Florida Statute 673.3011.

8.     Defendant(s), Miami Havana Development LLC, own(s) the property.

## COUNT I
## FORECLOSURE OF MORTGAGE

9.     Plaintiff hereby re-alleges and re-avers each and every allegation in in paragraphs 1 through 8 above as if fully restated herein.

10.    This is an action to foreclose a mortgage on real property in Miami-Dade County, Florida.

11.    There has been a default under the note and mortgage held by the Plaintiff in that the payment due August 1, 2023, and all subsequent payments have not been made. Plaintiff declares the full amount due under the note and mortgage to be now due. If applicable, Plaintiff incorporates any modifications, and/or extension of the subject mortgage loan.

12.    There is now due and owing to the Plaintiff the following amounts: unpaid balance of $334,707.77 plus interest, escrow, title search expenses for ascertaining necessary parties to this suit, title search, title exam, filing fee, and attorney's fees and costs.

13.    Plaintiff has obligated itself to pay the undersigned attorneys a reasonable fee for their services herein. Pursuant to the loan documents Plaintiff is entitled to an award of attorney's fees.

14.    Defendant, MIAMI DADE COUNTY, FLORIDA, may claim some interest in or lien upon the subject property by virtue of a Final Order Notice of Violations which is recorded in Official Records Book 27685, Page 1454 of the Public Records of Miami-Dade County, Florida. Said interest, if any, is subject and inferior to the lien of Plaintiff's mortgage.

15.    Defendant, UNKNOWN TENANT IN POSSESSION OF THE SUBJECT PROPERTY, may claim some interest in or lien upon the subject property arising from being in actual possession

23FL274-0006

of same, but interest, if any, is subject and inferior to the lien of Plaintiff's mortgage.

**WHEREFORE**, Plaintiff prays (1) that this Court will take jurisdiction of this cause, the subject matter and the parties hereto, (2) that this Court, subject to any applicable statute of limitations, (3) ascertain and determine the sums of money due and payable to the Plaintiff from the Defendant(s), including without limitation principal, interest, advances, attorney fees, and costs pursuant to the loan documents, that the sum of money found to be due as aforesaid be decreed by this Court to be a lien upon the lands described in Plaintiff's mortgage, (4) that such lien be foreclosed in accordance with the rules and established practice of this Court, and upon failure of the Defendants to pay the amount of money found to be due by them to the Plaintiff, the said land be sold to satisfy said lien, (5) that this Court decree that the lien of the Plaintiff is superior to any and all right, title or interest of the Defendants herein or any person or parties claiming by, through or under them since the institution of this suit, and (6) that all right, title or interest of the Defendant(s) or any person claiming by, through or under them be forever barred and foreclosed.

<u>**COUNT II**</u>
<u>**BREACH OF CONTRACT**</u>

16.     Plaintiff hereby re-alleges and re-avers each and every allegation in in paragraphs 1 through 15 above as if fully restated herein.

17.     On or about June 1, 2021, Miami Havana Development LLC entered into a contract which has previously been identified as Exhibit "A", the Note.

18.     Plaintiff has at all times performed the terms of the Note that were to be performed on Plaintiff's part in the manner specified in the Note. Miami Havana Development LLC, however, has failed and refused, and still fails and refuses, to perform terms of the Note to be performed on Defendant's part.

19.     In particular, Miami Havana Development LLC has failed to monetarily compensate the Plaintiff for the services the Plaintiff has provided to the Defendant under the terms of Note.

20.     As a result of Miami Havana Development LLC's failure and refusal to perform its obligations under the Note, Plaintiff has been damaged in the amount excess of $334,707.77.

**WHEREFORE**, Plaintiff, prays that this honorable Court (1) enter an order providing possession of the subject property, (2) enter an order assigning any lease agreement regarding the

subject property to the Plaintiff, (3) assign rents in favor of the Plaintiff, (4) appoint a receiver, and (5) enter judgment against Defendant for damages for all amounts due and owing under the Note and Mortgage, for interest, costs, and attorney's fees, and all such other and further relief as this Court deems just and proper.

## COUNT III
## BREACH OF GUARANTY

21.     Plaintiff hereby re-alleges and re-avers each and every allegation in in paragraphs 1 through 20 herein above as if fully restated herein.

22.     On or about June 1, 2021, in connection with the Loan as evidenced by the Guaranty, Defendant(s), ALEX PAVLOVSKY, ("Guarantors") made and delivered to Realty Capital Finance LLC a Commercial Guaranty which has previously been identified as Exhibit "C".

23.     Miami Havana Development LLC is in default of the note and mortgage that is subject of this action.

24.     Plaintiff has previously and herein does declare the full amount due and payable under the Note.

25.     Guarantors absolutely, unconditionally, and unequivocally guaranteed to the Plaintiff, among other things, the payment of principal and interest, costs of collection and other items directly attributable to the Loan that is the subject of this action for which Guarantor are personally liable.

26.     Guarantors failed to make such timely payment and are jointly and severally in breach of their obligations under the Commercial Guaranty.

27.     There is now due and owing to Plaintiff from Guarantors the amounts set forth above, together with per diem interest accrued through the date of entry of final judgment, together with any additional unpaid principal and/or advances, as well as late charges, costs and attorney fees, and other damages defined in the Loan Documents.

        **WHEREFORE,** Plaintiff, prays that this honorable Court (1) enter judgment against Guarantors for damages for all amounts due and owing under the guaranty, for interest, costs, and

attorney's fees, and (2) all such other and further relief as this Court deems just and proper.

## **VERIFICATION**

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

Printed name: ___Alicia Stewart___
Title: ___AVP___
Authorized representative of BSI Financial
Services, Inc., Mortgage Servicer for the Plaintiff

Miller, George & Suggs, PLLC
210 N. University Drive, Suite 900
Coral Springs, FL 33071
Telephone: 786-268-9954
DESIGNATED PRIMARY EMAIL FOR
SERVICE PURSUANT TO FLA. R. JUD.
ADMIN 2.516:
ESERVICE@MGS-LEGAL.COM

By: ___/s/ Aamir Saeed___
Aamir Saeed
Bar No. 102826

23FL274-0006

EXHIBIT A

MIAMI HAVANA DEVELOPMENT LLC
$356,250.00
June 01, 2021

## COMMERCIAL PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned, **MIAMI HAVANA DEVELOPMENT LLC,** a Florida limited liability company having an address at **168 La Quinta Court, Holmdel, NJ 07733** ("Maker"), promises to pay to the order of **REALTY CAPITAL FINANCE LLC,** a New Jersey limited liability company having an address at **1790 Swarthmore Avenue, Lakewood, NJ 08701** ("Lender"), or at such other place as the holder hereof may designate, the principal amount of **Three Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($356,250.00)**, with interest on the principal amount of this Note outstanding computed from the date hereof, together with all taxes assessed upon this Note and together with any costs, expenses, and reasonable attorneys' fees incurred in the collection of this Note or in protecting, maintaining, or enforcing its security interest or any mortgage securing this Note or upon any litigation or controversy affecting this Note or the security given therefor, including, without limitation, proceedings under the Federal Bankruptcy Code.

1. **Payments.** Principal and interest hereunder shall be payable as follows:

    **A.** From the date hereof, interest on the principal amount of this Note outstanding shall accrue at the rate of 9.25% per annum, for the period from the date hereof to and including June 30, 2021 shall be payable at the closing of the loan.

    **B.** The rate of interest of this Note, which shall remain effective until an Event of Default (as defined below), shall be fixed at 9.25% per annum. Interest on this Note shall be calculated on the basis of a 30-day month and a 360-day year.

    **C.** Beginning on **August 01, 2021** and continuing on the 1st **day** of each and every month thereafter through and including the payment due on **August 01, 2022** (as hereinafter defined), Maker shall make payments of interest only, in arrears, on the principal amount of this Note outstanding.

    **D.** If not sooner paid, the entire principal amount of this Note, together with accrued interest and with all other sums due hereunder, shall be due and payable in full on **August 01, 2022** (the "Maturity Date"). It is understood and agreed by Maker that if sufficient prepayments of principal have not been made, a balloon payment will be due on the Maturity Date.

    **E.** All payments received will be credited first to late charges and costs hereunder, then to interest accrued at the applicable interest rate hereinafter set forth, with the balance on account of principal.

    **F.** At no time shall the interest rate exceed the maximum rate permitted by the usury statutes governing this Note, if any. If, by application of the above interest rate

Initials

formula, the interest rate would exceed and violate such usury statutes, interest shall accrue at the maximum rate permitted by law.

**2. Security.** This Note is secured by a first priority Commercial Mortgage, Security Agreement, and Fixture Filing (the "Mortgage") on that certain piece or parcel of real property known as **140 NW 60th Street, Miami, FL 33127** being more specifically described in said Mortgage.

**3. Default.** If any of the following events occur (which is an "Event of Default"), Lender may declare the entire outstanding principal balance hereof, together with any other amounts that Maker owes to Lender, to be immediately due and payable:

    **a.**  Maker fails to pay any installment of principal and/or interest or any other charges due under this Note within five (5) days after the same becomes due and payable;

    **b.**  Maker defaults in any other obligations, liabilities, or indebtedness with Lender (whether now existing or hereafter arising);

    **c.**  Maker sells, leases, or otherwise disposes of all or substantially all of its property, assets, or business, or if Maker ceases any of its business operations, dissolves, or commences reorganization;

    **d.**  Makers makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in Bankruptcy, or conservator appointed for it or for substantially all or any of its assets;

    **e.**  Makers files or becomes the subject of a petition in Bankruptcy or upon the commencement of any proceeding or action under any Bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting Maker, provided, however, that Maker shall have sixty (60) days from the filing of any involuntary petition in Bankruptcy to have the same discharged and dismissed;

    **f.**  Upon the failure by Maker to observe or perform, or upon default in, any covenants, agreements, or provisions in the Mortgage, Loan Agreement or in any other instrument, document, or agreement, executed and/or delivered in connection herewith or therewith;

    **g.**  Any representation or statement made herein or any other representation or statement made or furnished to Lender by Maker was materially incorrect or misleading at the time it was made or furnished;

    **h.**  In the event of any material adverse change in the financial condition of Maker or any guarantor of the loan; or

    **i.**  Upon the death of any guarantor of the loan.

**4. Default Rate.** After the occurrence of an Event of Default, interest will accrue at the lesser of **(i)** 17% per annum or **(ii)** the Maximum Rate (as defined in Section 14 below) allowed by applicable law. Interest will continue to accrue at the default rate after judgment until the Note is paid in full.

**5. Prepayment.** Provided that Maker is not in default hereunder, Maker may prepay all or any portion of the unpaid principal balance of this Note at any time. All prepayment shall be applied first to any costs or charges

due hereunder, then to interest due and owing hereunder, and then to principal then outstanding, in inverse order of maturity.

**6. Late Charge.** It is further agreed that the holder hereof may collect a late charge equal to ten percent (10%) of any payment required hereunder, including the final payment, or required under any security agreement, mortgage, or any other instrument, document, or agreement executed and/or delivered in connection herewith which is not paid within five (5) days of the due date thereof. This late charge is to cover the extra expenses involved in handling delinquent payments and is not to be construed to cover other costs and attorneys' fees incurred in any action to collect this Note or to foreclose the mortgage securing the same. This provision shall not affect or limit the holder's rights or remedies with respect to any Event of Default.

**7. Lien/Set Off.** Maker hereby gives the holder hereof a lien and right of set off for all of Maker's liabilities to the holder hereof or Lender upon and against all deposits, credits, and other property of Maker now or hereafter in the possession or control of the holder hereof, or in transit to it, excepting however, funds held in trust by Maker. All payments shall be made in lawful currency of the United States of America in immediately available funds, without abatement, counterclaim, or set-off, and free and clear of, and without any deduction or withholding for, any taxes or other matters.

**8. Purpose of Loan.** Maker represents and warrants that the proceeds of this Note are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Maker acknowledges that Lender is making this loan to Maker in reliance upon the above representation by Maker. The above representation by Maker will survive the closing of this loan and repayment of amounts due to Lender hereunder.

**9. Other Obligations.** To the extent that the outstanding balance of this Note is reduced or paid in full by reason of any payment to Lender by an accommodation maker, endorser, or guarantor, and all or any part of such payment is rescinded, avoided, or recovered from Lender for any reason whatsoever, including, without limitation, any proceedings in connection with the insolvency, bankruptcy, or reorganization of the accommodation maker, endorser, or guarantor, the amount of such rescinded, avoided, or returned payment shall be added to or, in the event this Note has been previously paid in full, shall revive the principal balance of this Note upon which interest may be charged at the applicable rate set forth in this Note and shall be considered part of the outstanding balance of this Note and all terms and provisions herein shall thereafter apply to the same.

**10. WAIVER. MAKER (AND EACH AND EVERY ENDORSER, GUARANTOR, AND SURETY OF THIS NOTE) ACKNOWLEDGES THAT THE LOAN EVIDENCED BY THIS NOTE IS A COMMERCIAL TRANSACTION, AND HEREBY VOLUNTARILY AND KNOWINGLY WAIVES THE RIGHT TO NOTICE AND HEARING UNDER NEW JERSEY GENERAL STATUTES, OR ANY SUCCESSOR STATUTE OF SIMILAR IMPORT, WITH RESPECT TO ANY PREJUDGMENT REMEDY AS DEFINED THEREIN, AND FURTHER WAIVES DILIGENCE, DEMAND, PRESENTMENT FOR PAYMENT, NOTICE OF NONPAYMENT, PROTEST AND NOTICE OF PROTEST AND NOTICE OF ANY RENEWALS OR EXTENSIONS OF THIS NOTE, AND ALL RIGHTS UNDER ANY STATUTE OF LIMITATIONS, AND AGREES THAT THE TIME FOR PAYMENT OF THIS NOTE MAY BE CHANGED AND EXTENDED AS PROVIDED IN SAID MORTGAGE OR ANY SECURITY AGREEMENT, WITHOUT IMPAIRING MAKER'S LIABILITY THEREON, AND FURTHER CONSENTS TO THE RELEASE OF ALL OR ANY PART OF THE SECURITY FOR THE PAYMENT HEREOF, OR THE RELEASE OF ANY PARTY LIABLE FOR THIS OBLIGATION WITHOUT AFFECTING THE LIABILITY OF THE OTHER PARTIES HERETO. ANY DELAY ON THE PART OF THE HOLDER HEREOF IN EXERCISING ANY RIGHT HEREUNDER**

SHALL NOT OPERATE AS A WAIVER OF ANY SUCH RIGHT, AND ANY WAIVER GRANTED FOR ONE OCCASION SHALL NOT OPERATE AS A WAIVER IN THE EVENT OF ANY SUBSEQUENT DEFAULT. MAKER FURTHER WAIVES TRIAL BY JURY AND ACKNOWLEDGES THAT IT MAKES THIS WAIVER KNOWINGLY, VOLUNTARILY, AND ONLY AFTER CONSIDERATION OF THE RAMIFICATIONS OF THE WAIVER BY ITS ATTORNEY.

**11. Binding Effect.** This Note shall be binding on Maker, its successors and assigns and shall inure to the benefit of Lender, any holder hereof, its successors and assigns.

**12. Governing Law.** This Note shall be governed by, and construed in accordance with, the laws of the State of New Jersey, without reference to conflicts of laws principles thereof.

**13. Joint and Several.** Should this Note be signed by more than one Maker, references in this Note to Maker in the singular shall include the plural and all obligations herein contained shall be joint and several of each signer hereof.

**14. Maximum Rate.** Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid or agreed to be paid hereunder exceed the highest lawful rate permitted under applicable usury law (the "Maximum Rate") and the payment obligations of Maker under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the maturity of the unpaid principal balance hereof or otherwise, the aggregate amounts paid on this Note shall include amounts which by law are deemed interest and which would exceed the Maximum Rate, Maker stipulates that payment and collection of such excess amounts shall have been and will be deemed to have been the result of a mistake on the part of both Maker and the holder of this Note, and the party receiving such excess payments shall promptly credit such excess (to the extent only of such payments in excess of the Maximum Rate) against the unpaid principal balance hereof and any portion of such excess payments not capable of being so credited shall be refunded to Maker.

**15. Rights Cumulative.** The rights and remedies of Lender shall be cumulative and not in the alternative, and shall include all rights and remedies granted herein, in any document referred to herein or executed and/or delivered in connection herewith, and under all applicable laws, and the exercise of any one or more of them will not be a waiver of any other.

**16. Severability.** If any term, clause, or provision hereof shall be adjudged to be invalid or unenforceable by a court of appropriate jurisdiction, the validity and enforceability of the remainder shall not affected thereby and each such term, clause, or provision shall be valid and enforceable to the fullest extent permitted by law.


Initials

**IN WITNESS WHEREOF**, the undersigned have executed this Commercial Promissory Note on June 01, 2021.

MAKER

MIAMI HAVANA DEVELOPMENT LLC

By: _____

Name:  Alex Pavlovsky

Title:  Manager and Sole Member

STATE OF   FL          )

COUNTY OF   Broward    ) ss.:
                       )

I certify that on June 1, 2021 Alex Pavlovsky, came before me in person and stated to my satisfaction that he/she:

(a)     made the attached instrument; and

(b)     was authorized to and did execute this instrument on behalf of and as Manager and Sole Member of MIAMI HAVANA DEVELOPMENT LLC , (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and its member.



REID SANTIAGO
Notary Public - State of Florida
Commission # GG 112545
My Comm. Expires Sep 22, 2021
Bonded through National Notary Assn.

_____
NOTARY PUBLIC

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Promissory Note

_____
Initials

## ALLONGE TO PROMISSORY NOTE

For purposes of further endorsement of the following described Note, this Allonge is affixed and becomes a permanent part of said Note:

Note Date: June 01, 2021

Original Amount: Three Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($356,250.00)

Original Note Holder: Realty Capital Finance LLC

Borrower Name(s): MIAMI HAVANA DEVELOPMENT LLC

Property Address: 140 NW 60th Street, Miami, FL 33127

PAYABLE TO THE ORDER OF

**Toorak Capital Partners LLC**

AS IS, WHERE IS, without recourse, representation or warranty expressed or implied

By: Realty Capital Finance LLC

Signature
Name: Nicole Sofru
Title: Authorized Signor

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Allonge to Promissory Note

CFN: 20210436865 BOOK 32572 PAGE 3754
DATE:06/18/2021  11:14:49 AM
MTG DOC 1,247.05
INTANGIBLE 712.50
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

EXHIBIT B

Page **1** of **23**

**After Recording Return to:**

Samuel Kwadrat
Realty Capital Finance LLC
1790 Swarthmore Avenue
Lakewood, NJ 08701

**MIAMI HAVANA DEVELOPMENT LLC**
**$356,250.00**
**June 01, 2021**

## COMMERCIAL MORTGAGE, SECURITY AGREEMENT, FIXTURE FILING AND ASSIGNMENT OF LEASES AND RENTS

KNOW ALL MEN BY THESE PRESENTS that **MIAMI HAVANA DEVELOPMENT LLC,** a Florida limited liability company having an office at **168 La Quinta Court, Holmdel, NJ 07733** ("Mortgagor" or "Borrower", as the case maybe), for the consideration of **Three Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($356,250.00)** and other good and valuable consideration, received to its full satisfaction from **REALTY CAPITAL FINANCE LLC,** a New Jersey limited liability company having an address at **1790 Swarthmore Avenue, Lakewood, NJ 08701** ("Mortgagee" or " Lender", as the case maybe) does hereby give, grant, bargain, sell, and confirm unto the said Mortgagee, its successors and assigns forever, the following:

   **(A)** All right, title and interest in and to those premises more commonly known as **140 NW 60th Street, Miami, FL 33127** (the "Property")  which is more particularly described in **SCHEDULE A** (the "Premises") which is attached hereto and made a part hereof;

   **(B)** TOGETHER WITH **(1)** all buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Premises, and **(2)** all building materials, supplies and other property stored at or delivered to the Premises or any other location for incorporation into the improvements located or to be located on the Premises, and all fixtures, machinery, appliances, equipment, furniture and personal property of every nature whatsoever now or hereafter owned by Mortgagor and located in or on, or attached to, and used or intended to be used in connection with, or with the operation of, or the occupancy of, the Premises, buildings, structures or other improvements, or in connection with any construction being conducted or which may be conducted thereon, and owned by Mortgagor, and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing, and all of the right, title and interest of Mortgagor in and to such personal property which, to the fullest extent permitted by law, shall be conclusively deemed fixtures and a part of the real property encumbered hereby (the "Improvements");

   **(C)** TOGETHER WITH **(1)** all estate, right, title and interest of Mortgagor, of whatever character, whether now owned or hereafter acquired, in and to **(a)** all streets, roads and public places, open or proposed, in front of or adjoining the Premises, and the land lying in the bed of such streets, roads and public places, and **(b)** all other sidewalks, alleys, ways, passages, strips and gores of

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

land adjoining or used or intended to be used in connection with any of the property described in **paragraphs (A) and (B)** hereof, or any part thereof; and **(2)** all water courses, water rights, easements, rights-of-way and rights of use or passage, public or private, and all estates, interest, benefits, powers, rights (including, without limitation, any and all lateral support, drainage, slope, sewer, water, air, mineral, oil, gas and subsurface rights), privileges, licenses, profits, rents, royalties, tenements, hereditaments, reversions and subreversions, remainders and submemainders and appurtenances whatsoever in any way belonging, relating or appertaining to any of the property described in **paragraphs (A) and (B)** hereof, or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Mortgagor; and

**(D)** TOGETHER WITH **(a)** all estate, right, title and interest of Mortgagor of, in and to all judgments, insurance proceeds, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the property described in **paragraphs (A), (B) and (C)** hereof or any part thereof under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the property described in **paragraphs (A), (B) or (C)** hereof or any part thereof, or to any rights appurtenant thereto, and all proceeds of any sales or other dispositions of the property described in **paragraphs (A), (B) or (C)** hereof, or any part thereof; and Mortgagee is hereby authorized to collect and receive said awards and proceeds and to give proper receipts and acquitances therefor, and (if it so elects) to apply the same, after deducting therefrom any expenses incurred by Mortgagee in the collection and handling thereof, toward the payment of the indebtedness and other sums secured hereby, notwithstanding the fact that the amount owing thereon may not then be due and payable; and **(b)** all contract rights, general intangibles, governmental permits, licenses and approvals, actions and rights in action, including without limitation all rights to insurance proceeds and unearned premiums, arising from or relating to the property described in **paragraphs (A), (B) and (C)** above; and **(c)** all proceeds, products, replacements additions, substitutions, renewals and accessions of and to the property described in **paragraphs (A), (B)** and **(C)**.

All of the property described in **paragraphs (A), (B), (C) and (D)** above, and each item of property therein described, is herein referred to as the "Mortgaged Property".

TO HAVE AND TO HOLD the above granted and bargained Premises, with the appurtenances thereof, unto it, the said Mortgagee, its successors and assigns forever, to it and their own proper use and behoof. And also, the said Mortgagor does for itself, its successors and assigns, covenant with the said Mortgagee, its successors and assigns, that at and until the ensealing of these presents, they are well seized of the Premises as a good indefeasible estate in FEE SIMPLE; and have good right to bargain and sell the same in manner and form as is above written; and that the same is free and clear of all encumbrances whatsoever.

AND FURTHERMORE, Mortgagor does by these presents bind itself, its legal representatives and its successors and assigns forever to WARRANT AND DEFEND the above granted and bargained Mortgaged Property to Mortgagee, its successors and assigns, against all claims and demands whatsoever.

## THE CONDITION OF THIS MORTGAGE IS SUCH THAT:

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

WHEREAS, Mortgagor is indebted to Mortgagee by virtue of a commercial loan transaction (the "Loan") in the sum of **Three Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($356,250.00)** as evidenced by (1) a certain Commercial Promissory Note in the principal amount of **Three Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($356,250.00)** (as same may be amended, restated, or modified from time to time, the "Note") dated **June 01, 2021** executed by Mortgagor and delivered to Mortgagee, with all amounts remaining unpaid thereon being finally due and payable on **July 01, 2022** and (2) that certain Loan Agreement (as same may be amended, restated, or modified from time to time, "Loan Agreement") of even date herewith;

WHEREAS, to secure payment and performance of the indebtedness and obligations represented by the Note, the Mortgagor is hereby executing this Mortgage in favor of the Mortgagee;
WHEREAS, Mortgagee has agreed to provide financing for the purchase and renovations of the premises located at: **140 NW 60th Street, Miami, FL 33127**; and

WHEREAS, Mortgagor has agreed to grant Mortgagee a mortgage in the Premises as collateral for the refinancing of the premises located at: **140 NW 60th Street, Miami, FL 33127**; and

WHEREAS, at closing, the Mortgagee initially advanced the sum of **Two Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($256,250.00)** to Mortgagor on the date hereof and may make further advances of an additional **One Hundred Thousand and 00/100 dollars ($100,000.00)** for a total loan in the amount of **Three Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($356,250.00)**; and

WHEREAS, buildings and/or improvements on the Mortgaged Property are in the process of construction or repair, or are to be constructed, erected or repaired; and

WHEREAS, Mortgagee has agreed to make the Loan to Mortgagor, the balance of which is to be paid to Mortgagor in installments, provided Mortgagor is not in default hereunder, the time and amount of each advancement to be at the sole discretion of Mortgagee, up to **Three Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($356,250.00)** and

WHEREAS, Mortgagor represents and warrants that it has full power and authority to execute and deliver the Note, this Mortgage, and all other documents, agreements and instruments required of it by Mortgagee in connection with the making of the Loan (the Note, this Mortgage, and all such other documents, agreements and instruments executed and delivered by Mortgagor in connection with the Loan being sometimes collectively referred to herein as the "Loan Documents").

NOW, THEREFORE, Mortgagor hereby covenants and agrees with Mortgagee as follows:

## ARTICLE ONE: COVENANTS OF MORTGAGOR

**1.01 Performance of Loan Documents.** Mortgagor shall cause to be performed, observed and complied with all provisions hereof, of the Note and each of the Loan Documents, and will promptly pay to Mortgagee the principal, with interest thereon, and all other sums required to be paid by Mortgagor under the Note and pursuant to the provisions of this Mortgage and of the Loan Documents when payment shall

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 15 of 40
CFN: 20210436865 BOOK 32572 PAGE 3757

Page **4** of **23**

become due (the entire principal amount of the Note, all accrued interest thereon and all obligations and indebtedness thereunder and hereunder and under all of the Loan Documents described being referred to herein as the "Indebtedness").

**1.02 General Representations, Covenants and Warranties.** Mortgagor represents and covenants that **(a)** Mortgagor is now able to meet its debts as they mature, the fair market value of its assets exceeds its liabilities and no bankruptcy or insolvency case or proceeding is pending or contemplated by or against Mortgagor; **(b)** all reports, statements and other data furnished by Mortgagor to Mortgagee in connection with the Loan are true, correct and complete in all material respects and do not omit to state any fact or circumstance necessary to make the statements contained therein not misleading; **(c)** this Mortgage, the Note and all other Loan Documents are legal, valid and binding obligations of Mortgagor enforceable in accordance with their respective terms and the execution and delivery thereof do not contravene any contract or agreement to which Mortgagor is a party or by which Mortgagor may be bound and do not contravene any law, order, decree, rule or regulation to which Mortgagor is subject; **(d)** there are no actions, suits or proceedings pending, or to the knowledge of Mortgagor threatened, against or affecting Mortgagor or any part of the Mortgaged Property; **(e)** all costs arising from construction of any improvements and the purchase of all equipment located on the Mortgaged Property which have been incurred prior to the date of this Mortgage have been paid; **(f)** the Mortgaged Property has frontage on, and direct access for, ingress and egress to the street(s) described in any survey submitted to Mortgagee; **(g)** electric, sewer, water facilities and any other necessary utilities are, or will be, available in sufficient capacity to service the Mortgaged Property satisfactorily during the term of the Note, and any easements necessary to the furnishing of such utility service by Mortgagor have been or will be obtained and duly recorded (evidence satisfactory to Mortgagee that all utility services required for the use, occupancy and operations of the Mortgaged Property shall be provided to Mortgagee immediately upon Mortgagee's request); **(h)** there has not been, is not presently and will not in the future be any activity conducted by Mortgagor or any tenant at or upon any part of the Mortgaged Property that has given or will give rise to the imposition of a lien on any part of the Mortgaged Property; **(i)** Mortgagor is not in default under the terms of any instrument evidencing or securing any indebtedness of Mortgagor, and there has occurred no event which would, if uncured or uncorrected, constitute a default under any such instrument with the giving of notice, or the passage of time or both; and **(j)** Mortgagee has legal capacity to enter into the Loan and to execute and deliver the Loan Documents, and the Loan Documents have been duly and properly executed on behalf of Mortgagee.

**1.03 Compliance with Laws; Permits; Notice.** Mortgagor covenants and warrants that the Mortgaged Property presently complies with and shall continue to comply with all applicable restrictive covenants, applicable zoning, wetlands and subdivision ordinances and building codes, all applicable health and environmental laws and regulations and all other applicable laws, statutes, rules, ordinances, codes, and regulations, and Mortgagor has not received any notice that the Mortgaged Property is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations. If Mortgagor receives notice from any federal, state or other governmental body that it is not in compliance with any such laws, statutes, rules, ordinances, codes and regulations, Mortgagor shall provide Mortgagee with a copy of such notice promptly. Mortgagor agrees to comply with all federal, state and municipal local laws, statutes, rules, ordinances, codes and regulations in connection with the construction and development of the Mortgaged Property. Mortgagor has obtained all licenses, permits, authorizations, consents and approvals necessary for the construction and development of the Mortgaged Property, and all such licenses, permits, authorizations, consents and approvals are in full force and effect and all appeal periods have expired.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Unless required by applicable law or unless Mortgagee has otherwise agreed in writing, Mortgagor shall not allow changes in the nature of the occupancy for which the Premises were intended at the time this Mortgage was executed. Mortgagor shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Mortgagee's prior written consent. Mortgagor warrants and represents that its use, and the use by any of its tenants, of the Mortgaged Property is in accordance and compliance with the terms and conditions of any and all rules, regulations, and laws that may be applicable to the Mortgaged Property, including, without limitation, all federal, state and local laws, ordinances, rules and regulations regarding hazardous and toxic materials and that Mortgagor shall maintain and continue such compliance and shall require and ensure its tenants' compliance with the same. Mortgagor shall maintain or shall cause their agent to maintain in its possession, available for the inspection of the Mortgagee, and shall deliver to the Mortgagee, upon three (3) business days' request, evidence of compliance with all such requirements. Mortgagor hereby indemnifies and holds Mortgagee free of and harmless from and against any and all claims, demands, damages or liabilities that Mortgagee may incur with regard thereto.

**1.04 Taxes and Other Charges.**

**1.04.1 Impositions.** Subject to the provisions of this **Section 1.04**, Mortgagor shall pay, at least five (5) days before the date due, all real estate taxes, personal property taxes, assessments, water and sewer rates and charges, license fees, all charges which may be imposed for the use of vaults, chutes, areas and other space beyond the lot line and abutting the public sidewalks in front of or adjoining the Premises, and all other governmental levies and charges (collectively, the "Impositions"), of every kind and nature whatsoever, general and special, ordinary and extraordinary, foreseen and unforeseen, which shall be assessed, levied, confirmed, imposed or become a lien upon or against the Mortgaged Property or any part thereof, or which shall become payable with respect thereto. Mortgagor shall deliver to Mortgagee, within twenty (20) days after the due date of each payment in connection with the Impositions or any assessment for local improvements ("Assessment"), the original or a true Photostatic copy of the official receipt evidencing such payment or other proof of payment satisfactory to Mortgagee.

**1.04.2 Insurance.**

**(a)** Mortgagor shall keep all buildings erected on or to be erected on the Mortgaged Property insured against loss by fire and such other hazards as the Mortgagee may require and Mortgagor shall obtain and maintain insurance with respect to other insurable risks and coverage relating to the Mortgaged Property including, without limitation, fire, builder's risk, worker's compensation, physical damages, loss of rentals or business interruption, earthquake (if applicable), and liability insurance, all such insurance to be in such sums and upon such terms and conditions as Mortgagee reasonably may require, with loss proceeds by the terms of such policies made payable to the Mortgagee as its interest may appear. Mortgagor covenants that all insurance premiums shall be paid not later than fifteen (15) days prior to the date on which such policy could be cancelled for non-payment. If, to Mortgagor's knowledge, any portion of the Mortgaged Property is in an area identified by any federal governmental authority as having special flood hazards, and flood insurance is available, a flood insurance policy meeting the current guidelines of the FEMA's Federal Insurance and Mitigation Administration is in effect with a generally acceptable insurance carrier, in an amount representing coverage not less than the least of (1) the outstanding principal balance of the Loan,

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

(2) the full insurable value of the Mortgaged Property, and (3) the maximum amount of insurance available under the Flood Disaster Protection Act of 1973, as amended. All such insurance policies (collectively, the "hazard insurance policy") shall contain a standard mortgagee clause naming the Mortgagee and its successors and assigns as beneficiary, and may not be reduced, terminated, or canceled without thirty (30) days' prior written notice to the Mortgagee.

**(b)** Such insurance companies shall be duly qualified as such under the laws of the states in which the Mortgaged Property is located, duly authorized and licensed in such states to transact the applicable insurance business and to write the insurance provided, and companies whose claims paying ability is rated in the two highest rating categories by A.M. Best with respect to hazard and flood insurance. Such insurance shall be in amounts not less than the greater of: **(i)** the outstanding principal balance of the Loan, or **(ii)** the amount necessary to avoid the operation of any co-insurance provisions with respect to the Premises.

**(c)** All such policies shall provide for a minimum of thirty (30) days prior written cancellation notice to Mortgagee. Mortgagee, upon its request to Mortgagor, shall have the custody of all such policies and all other policies which may be procured insuring said Mortgaged Property, the same to be delivered, to Mortgagee at its office and all renewal policies to be delivered and premiums paid to Mortgagee at its office at least twenty (20) days before the expiration of the old policies; and Mortgagor agrees that upon failure to maintain the insurance as above stipulated or to deliver said renewal policies as aforesaid, or to pay the premiums therefor, Mortgagee may, without obligation to do so, procure such insurance and pay the premiums therefor and all sums so expended shall immediately be paid by Mortgagor and unless so paid, shall be deemed part of the debt secured hereby and shall bear interest at the rate set forth in the Note, and thereupon the entire principal sum unpaid, including such sums as have been paid for premiums of insurance as aforesaid, and any and all other sums which shall be payable hereunder shall become due and payable forthwith at the option of Mortgagee, anything herein contained to the contrary notwithstanding. In case of loss and payment by any insurance company, the amount of insurance money received shall be applied either to the Indebtedness secured hereby, or in rebuilding and restoring the damaged property, as Mortgagee may elect.

**(d)** Mortgagor has not engaged in and shall not engage in any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either including, without limitation, no unlawful fee, commission, kickback, or other unlawful compensation or value of any kind has been or will be received, retained, or realized by any attorney, firm, or other person, and no such unlawful items have been received, retained, or realized by Mortgagor.

**(e)** No action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable special hazard insurance policy or bankruptcy bond, irrespective of the cause of such failure of coverage.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 18 of 40
CFN: 20210436865 BOOK 32572 PAGE 3760

Page **7** of **23**

**1.04.3 Deposits for Impositions and Insurance.** Notwithstanding anything to the contrary contained in any of the Loan Documents, upon demand by Mortgagee, after failure by Mortgagor to pay any of the amounts specified in **Sections 1.04.1 or 1.04.2**, Mortgagor shall deposit with Mortgagee on the first day of each month an amount equal to one twelfth (1/12th) of the sum of: **(i)** the aggregate annual payments for the Impositions; **(ii)** the annual insurance premiums on the policies of insurance required to be obtained and kept in force by Mortgagor under this Mortgage; and **(iii)** all other periodic charges (other than interest and principal under the Note) arising out of the ownership of the Mortgaged Property or any portion thereof which are or with notice or the passage of time or both will become a lien against the Mortgaged Property or any part thereof (**(i)**, **(ii)**, and **(iii)**, collectively, the "Annual Payments"). Such sums will not bear interest and are subject to adjustment or additional payments in order to assure Mortgagee that it will have the full amount of any payment on hand at least one (1) month prior to its due date. Mortgagee shall hold said sums in escrow to pay said Annual Payments in the manner and to the extent permitted by law when the same become due and payable. Notwithstanding anything herein to the contrary, however, such deposits shall not be, nor be deemed to be, trust funds but may be commingled with the general funds of Mortgagee. If the total payments made by Mortgagor to Mortgagee, on account of said Annual Payments up to the time when the same become due and payable, shall exceed the amount of payment for said Annual Payments actually made by Mortgagee, such excess shall be credited by Mortgagee against the next payment or payments due from Mortgagor to Mortgagee on account of said Annual Payments. If, however, said payments made by Mortgagor shall not be sufficient to pay said Annual Payments when the same become due and payable, Mortgagor agrees to promptly pay to Mortgagee the amount necessary to make up any deficiency. In case of default in the performance of any of the agreements or provisions contained in the Note, Mortgagee may, at its option, at any time after such default, apply the balance remaining of the sums accumulated, as a credit against the principal or interest of the mortgage Indebtedness, or both.

**1.04.4 Late Charge.** Mortgagee may collect a "late charge" of ten percent (10%) on any payment or installment due or required to be paid pursuant to the terms of this Mortgage or the Note which is not paid within five (5) days of when the same is required to be paid to cover the extra expenses involved in handling such delinquent payment.

**1.04.5 Proof of Payment.** Upon request of Mortgagee, Mortgagor shall deliver to Mortgagee, within twenty (20) days after the due date of any payment required in this **Section 1.04**, proof of payment satisfactory to Mortgagee.

**1.05 Condemnation.** Mortgagee shall be entitled to all compensation awards, damages, claims, rights of action and proceeds of, or on account of, any damage or taking through condemnation, eminent domain or the like, and Mortgagee is hereby authorized, at its option, to commence, appear in and prosecute in its own or Mortgagor's name any action or proceeding relating to any such condemnation, taking or the like and to settle or compromise any claim in connection therewith.

**1.06 Care of Mortgaged Property; Demolition and Alteration**. Mortgagor shall maintain the Mortgaged Property in good condition and repair, shall not commit or suffer any waste of the Mortgaged Property, and shall comply with or cause to be complied with, all statutes, laws, rules, ordinances and requirements of any governmental authority relating to the Mortgaged Property; and Mortgagor shall promptly repair, restore, replace or rebuild any part of the Mortgaged Property now or hereafter subject to the lien of this Mortgage which may be damaged or destroyed by any

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

casualty whatsoever or which may be affected by any proceeding of the character referred to **in Section 1.05.** Mortgagor shall complete and pay for, within a reasonable time, any structure in the process of construction on the Mortgaged Property at any time during the term of the Loan; and Mortgagor shall not initiate, join in, or consent to any change in any private restrictive covenants, or private restrictions, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof, without the written consent of Mortgagee. Mortgagor agrees that no building or other property now or hereafter covered by the lien of this Mortgage shall be removed, demolished, or materially altered, without the prior written consent of Mortgagee, except that Mortgagor shall have the right, without such consent, to remove and dispose of, free from the lien of this Mortgage, such equipment as from time to time may become worn out or obsolete, provided that simultaneously with or prior to such removal any such equipment shall be replaced with other equipment of value at least equal to that of the replaced equipment and free from any title retention or security agreement or other encumbrance, and by such removal and replacement Mortgagor shall be deemed to have subjected such equipment to the lien of this Mortgage.

### 1.07 Transfer and Encumbrance of Mortgaged Property.

(a) Mortgagor shall not sell, convey, transfer, suffer any type of change in title or ownership, lease, assign or further encumber any interest in any part of the Mortgaged Property, without the prior written consent of Mortgagee, Any such sale, conveyance, transfer, pledge, lease, assignment or encumbrance made without Mortgagee's prior written consent shall be null and void and shall constitute a default hereunder. Mortgagor shall not, without the prior written consent of Mortgagee, permit any further assignment of the rents, royalties, issues, revenues, income, profits or other benefits from the Mortgaged Property, or any part thereof, and any such assignment without the prior written consent of Mortgagee shall be null and void and shall constitute a default hereunder. Mortgagor agrees that in the event the ownership of the Mortgaged Property or any part thereof is permitted by Mortgagee to be vested in a person other than Mortgagor, Mortgagee may, without notice to Mortgagor, deal in any way with such successor or successors in interest with reference to this Mortgage and the Note and other sums hereby secured without in any way vitiating or discharging Mortgagor's liability hereunder or upon the Note and other sums hereby secured. No sale of the Mortgaged Property and no forbearance to any person with respect to this Mortgage and no extension to any person of the time for payment of the Note and other sums hereby secured given by Mortgagee shall operate to release, discharge, modify, change or affect the original liability of Mortgagor either in whole or in part.

(b) If Mortgagor shall sell, convey, assign or transfer all or any part of the Mortgaged Property or any interest therein or any beneficial interest in Mortgagor without Mortgagee's prior written consent, Mortgagee may, at Mortgagee's option, without demand, presentment, protest, notice of protest, notice of intent to accelerate, notice of acceleration or other notice, or any other action, all of which are hereby waived by Mortgagor and all other parties obligated in any manner on the Indebtedness, declare the Indebtedness to be immediately due and payable, which option may be exercised at any time following such sale, conveyance, assignment, lease or transfer, and upon such declaration the entire unpaid balance of the Indebtedness shall be immediately due and payable.

(c) Mortgagor shall keep the Mortgaged Property free from mechanics' liens, materialmen's liens and encumbrances. If any prohibited lien or encumbrance is filed against the Mortgaged Property,

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 20 of 40
CFN: 20210436865 BOOK 32572 PAGE 3762

Page **9** of **23**

Mortgagor shall cause the same to be removed and discharged of record within thirty (30) days after the date of filing thereof.

(d) Mortgagor shall obtain, upon request by Mortgagee, from all persons hereafter having or acquiring any interest in or encumbrance on the Mortgaged Property or the said equipment or accessions, a writing duly acknowledged, and stating the nature and extent of such interest or encumbrance and that the same is subordinate to this Mortgage and no offsets or defenses exist in favor thereof against this Mortgage or the Note hereby secured, and deliver such writing to Mortgagee.

**1.08 Further Assurances.** At any time and from time to time upon Mortgagee's request, Mortgagor shall make, execute and deliver, or cause to be made, executed and delivered, to Mortgagee and, where appropriate, shall cause to be recorded or filed, and from time to time thereafter to be re-recorded and refiled, at such time and in such offices and places as shall be deemed desirable by Mortgagee, any and all such further mortgages, instruments of further assurance, certificates and such other documents as Mortgagee may consider necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve, the obligations of Mortgagor under the Note and this Mortgage, the lien of this Mortgage as a lien upon all of the Mortgaged Property, and unto all and every person or persons deriving any estate, right, title or interest under this Mortgage. Upon any failure by Mortgagor to do so, Mortgagee may make, execute, record, file, re-record or refile any and all such mortgages, instruments, certificates and documents for and in the name of Mortgagor, and Mortgagor hereby irrevocably appoints Mortgagee the agent and attorney-in-fact of Mortgagor to do so.

**1.09 Uniform Commercial Code Security Agreement and Fixture Filing**. This Mortgage is intended to be a security agreement and fixture filing which is to be filed for record in the real estate records pursuant to the Uniform Commercial Code in effect from time to time in the State of Florida for any of the goods specified above in this Mortgage as part of the Mortgaged Property which, under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code and Mortgagor hereby agrees to execute and deliver any additional financing statements covering said goods from time to time and in such form as Mortgagee may require to perfect a security interest with respect to said goods. Mortgagor shall pay all costs of filing such financing statements and renewals and releases thereof and shall pay all reasonable costs and expenses of any record searches for financing statements which Mortgagee may reasonably require. Without the prior written consent of Mortgagee, Mortgagor shall not create or suffer to be created, pursuant to the Uniform Commercial Code, any other security interest in said goods, including replacements and additions thereto. Upon Mortgagor's breach of any covenant or agreement of Mortgagor contained in this Mortgage, including the covenants to pay when due all sums secured by this Mortgage, Mortgagee shall have the remedies of a secured party under the Uniform Commercial Code and, at Mortgagee's option, may also invoke the remedies permitted by applicable law as to such goods.

AS IT IS RELATED HERETO:

DEBTOR IS:                          MIAMI HAVANA DEVELOPMENT LLC
                                    168 La Quinta Court, Holmdel, NJ 07733

SECURED PARTY IS:                   Realty Capital Finance LLC
                                    1790 Swarthmore Avenue, Lakewood, NJ 08701

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 21 of 40
CFN: 20210436865 BOOK 32572 PAGE 3763

Page **10** of **23**

Mortgagor represents, covenants, and warrants that as of the date hereof as follows: Mortgagor's full, correct, and exact legal name is set forth immediately above in this **Section 1.09**. Mortgagor is an organization of the type and is incorporated in, organized, or formed under the laws of the state specified in the introductory paragraph to this Mortgage. In the event of any change in name or identity of Mortgagor, Mortgagor hereby authorizes Mortgagee to file such Uniform Commercial Code forms as are necessary to maintain the priority of Mortgagee's lien upon the Mortgaged Property which may be deemed personal property or fixtures, including future replacement thereof, which serves as collateral under this Mortgage.

**1.10 Lease Covenants.** Each and every covenant on the part of Mortgagor contained in any assignment of lessor's interest in leases or any assignment of rents, royalties, issues, revenues, profits, income or other benefits made collateral hereto is made an obligation of Mortgagor hereunder as if fully set forth herein.

**1.11 Assignment of Rents.** Mortgagor hereby absolutely and unconditionally assigns to Mortgagee all of Mortgagor's right, title and interest in and to each Lease whether now existing or hereafter entered into, together with the room revenues, occupancy charges, issues and profits ("Rents") of each such Lease as further security for the payment and performance of the Obligations, and Mortgagor grants to Mortgagee the right to enter the Property for the purpose of collecting the same and to let the Property, or any part thereof, and to apply said Rents after payment of all necessary charges and expenses, on account of the Obligations. This assignment and grant shall continue in effect until the Obligations are fully paid and performed. Mortgagee hereby waives the right to enter the Property for the purpose of collecting Rents, and Mortgagor shall be entitled to collect, receive and use said Rents until the occurrence of a Default under this Mortgage. Mortgagor shall, from time to time after request by Mortgagee, execute, acknowledge and deliver to Mortgagee, in form satisfactory to Mortgagee, separate assignments confirming the foregoing assignment. Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by Mortgagor under any Lease or other agreement affecting all or any part of the Property, and Mortgagor hereby agrees to indemnify Mortgagee for and save it harmless from, any and all liability arising from any such Lease or other agreement or any assignments thereof, and no assignment of any such Lease or other agreement shall place the responsibility for the control, care, management or repair of all or any part of the Property upon Mortgagee, nor make Mortgagee liable for any negligence in the management, operation, upkeep, repair or control of all or any part of the Property resulting in injury, death or property damage. Mortgagee or the receiver shall be liable to account only for rents and profits actually received by Mortgagee or the receiver as the case may be.

**1.12 After-Acquired Property.** To the extent permitted by and subject to applicable law, the lien of this Mortgage will automatically attach, without further act, to all after-acquired property located in, on, or attached to, or used, or intended to be used, in connection with, or with the renovation of, the Mortgaged Property or any part thereof; provided, however, that, upon request of Mortgagee, Mortgagor shall execute and deliver such instrument or instruments as shall reasonably be requested by Mortgagee to confirm such lien, and Mortgagor hereby appoints Mortgagee its attorney-in-fact to execute all such instruments, which power is coupled with an interest and is irrevocable.

**1.13 Expenses.** Unless otherwise agreed in writing, Mortgagor will pay when due and payable all appraisal fees, recording fees, taxes, brokerage fees and commissions, abstract fees, title policy fees,

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG Document 1-1 Entered on FLSD Docket 03/11/2024 Page 22 of 40
CFN: 20210436865 BOOK 32572 PAGE 3764

Page **11** of **23**

escrow fees, attorneys' fees, court costs, fees of inspecting architect(s) and engineer(s) and all other costs and expenses of every character which have been incurred or which may hereafter be incurred by Mortgagee in connection with: **(a)** the preparation and execution of the Loan Documents; **(b)** the funding of the Loan; **(c)** in the event an Event of Default occurs hereunder or under the Note or any of the Loan Documents, all costs, fees and expenses, including, without limitation, all reasonable attorneys' fees in connection with the enforcement under the Note or foreclosure under this Mortgage, preparation for enforcement of this Mortgage or any other Loan Documents, whether or not suit or other action is actually commenced or undertaken; **(d)** enforcement of this Mortgage or any other Loan Documents; **(e)** court or administrative proceedings of any kind to which Mortgagee may be a party, either as plaintiff or defendant, by reason of the Note, the Mortgage or any other Loan Documents; **(f)** preparation for and actions taken in connection with Mortgagee's taking possession of the Mortgaged Property; **(g)** negotiations with Mortgagor, its beneficiary, or any of its agents in connection with the existence or cure of any Event of Default or default; **(h)** any proposed refinancing by Mortgagor or any other person or entity of the debt secured hereby; **(i)** the transfer of the Mortgaged Property in lieu of foreclosure; **(j)** inspection of the Mortgaged Property pursuant to **Section 1.15**; and **(k)** the approval by Mortgagee of actions taken or proposed to be taken by Mortgagor, its beneficiary, or other person or entity which approval is required by the terms of this Mortgage or any other of the Loan Document. Mortgagor will, upon demand by Mortgagee, reimburse Mortgagee or any takeout lender for all such expenses which have been incurred or which shall be incurred by either of them; and will indemnify and hold harmless Mortgagee from and against, and reimburse it for, the same and for all claims, demands, liabilities, losses, damages, judgments, penalties, costs and expenses (including, without limitation, attorneys' fees) which may be imposed upon, asserted against, or incurred or paid by it by reason of, on account of or in connection with any bodily injury or death or property damage occurring in or upon or in the vicinity of the Mortgaged Property through any cause whatsoever or asserted against it on account of any act performed or omitted to be performed hereunder or on account of any transaction arising out of or in any way connected with the Mortgaged Property, or with this Mortgage or the Indebtedness.

**1.14 Mortgagee's Performance of Defaults.** If Mortgagor defaults in the payment of any tax, Assessment, encumbrance or other Imposition, in its obligation to furnish insurance hereunder, or in the performance or observance of any other covenant, condition, agreement or term in this Mortgage, the Note or in any of the Loan Documents, Mortgagee may, without obligation to do so, to preserve its interest in the Mortgaged Property, perform or observe the same, and all payments made (whether such payments are regular or accelerated payments) and costs and expenses incurred or paid by Mortgagee in connection therewith shall become due and payable immediately. The amounts so incurred or paid by Mortgagee, together with interest thereon at the default rate, as provided in the Note, from the date incurred until paid by Mortgagor, shall be added to the Indebtedness and secured by the lien of this Mortgage to the extent permitted by law. Mortgagee is hereby empowered to enter and to authorize others to enter upon the Mortgaged Property or any part thereof for the purpose of performing or observing any such defaulted covenant, condition, agreement or term, without thereby becoming liable to Mortgagor or any person in possession holding under Mortgagor.

**1.15 Financial Statements, Books, and Records.** Mortgagor will furnish to Mortgagee, within thirty (30) days after a request therefor, a detailed statement in writing, covering the period of time specified in such request, showing all income derived from the operation of the Mortgaged Property, and all disbursements made in connection therewith, and containing a list of the names of all tenants and occupants of the Mortgaged Property, the portion or portions of the Mortgaged Property occupied by each such tenant and

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG    Document 1-1    Entered on FLSD Docket 03/11/2024    Page 23 of 40
CFN: 20210436865 BOOK 32572 PAGE 3765

Page **12** of **23**

occupant, the rent and other charges payable under the terms of their leases or other agreements and the period covered by such leases or other agreements.

**1.16 Inspection.** Mortgagee, and any persons authorized by Mortgagee, shall have the right, at Mortgagee's option, to enter and inspect the Premises during the fourth (4th) month and at all other reasonable times during the term of the Loan. Mortgagor shall pay any professional fees and expenses, which may be incurred by Mortgagee in connection with such inspection.

**1.17 Loan to Value Covenant.** If at any one or more time(s) during the term of the Note the then aggregate outstanding and committed principal amount of the Note, plus accrued interest and fees thereon, plus all amounts outstanding under any debts secured by prior liens on the Mortgaged Property, is greater than eighty percent (80%) of the value of the Mortgaged Property, as determined by Mortgagee based upon Mortgagee's review of any appraisal and such other factors as Mortgagee may deem appropriate, then Mortgagor shall within thirty (30) days following a request by Mortgagee, prepay the Note by an amount sufficient to cause the then outstanding principal amount of the Note, plus accrued interest and fees thereon, to be reduced to an amount equal to or less than eighty percent (80%) of the value of the Mortgaged Property. The inability of Mortgagor to reduce the principal balance of the Note within thirty (30) days following request by Mortgagee shall be, at Mortgagee's option, an Event of Default, hereunder.

## ARTICLE TWO: DEFAULTS

**2.01 Event of Default.** The term "Event of Default" or "default" wherever used in this Mortgage, shall mean anyone or more of the following events: **(a)** failure by Mortgagor to pay any installment of principal and/or interest under the Note within five (5) days after the same becomes due and payable; **(b)** failure by Mortgagor to observe or perform, or upon any default in, any other covenants, agreements or provisions herein, in the Note, or in any of the Loan Documents; **(c)** failure by Mortgagor to pay any Imposition, Assessment, other utility charges on or lien against the Mortgaged Property; **(d)** failure by Mortgagor to keep in force the insurance required in this Mortgage; **(e)** failure by Mortgagor to either deliver the policies of insurance described in this Mortgage or to pay the premiums for such insurance as provided herein; **(f)** failure by Mortgagor to pay any installment, which may not then be due or delinquent, of any Assessment for local improvements for which an official bill has been issued by the appropriate authorities and which may now or hereafter affect the Mortgaged Property, and may be or become payable in installments; **(g)** the actual or threatened waste, removal or demolition of, or material alteration to, any part of the Mortgaged Property, except as permitted herein; **(h)** the vesting of title, or any sale, conveyance, transfer, leasing, assignment or further encumbrance in any manner whatsoever of any interest in the Mortgaged Property, or any part thereof, in or to anyone other than the present owner, or any change in title or ownership of the Mortgaged Property, or any part thereof, without the prior written consent of Mortgagee; **(i)** all or a material portion of the Mortgaged Property being taken through condemnation, eminent domain, or any other taking such that Mortgagee has reason to believe that the remaining portion of the Mortgaged Property is insufficient to satisfy the outstanding balance of the Note, or the value of the Mortgaged Property being impaired by condemnation, eminent domain or any other taking, (which term when used herein shall include, but not be limited to, any damage or taking by any governmental authority or any other authority authorized by the laws of any state or the United States of America to so damage or take, and any transfer by private sale in lieu thereof), either temporarily for a period in excess of thirty (30) days, or permanently; **(j)** the merger or dissolution of Mortgagor or the

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 24 of 40
CFN: 20210436865 BOOK 32572 PAGE 3766

Page **13** of **23**

death of any guarantor of the Note ("Guarantor"); **(k)** any representation or warranty of Mortgagor or Guarantor made herein or in any such guaranty or in any certificate, report, financial statement, or other instrument furnished in connection with the making of the Note, the Mortgage, or any such guaranty, shall prove false or misleading in any material respect; **(l)** Maker makes or takes any action to make a general assignment for the benefit of its creditors or becomes insolvent or has a receiver, custodian, trustee in Bankruptcy, or conservator appointed for it or for substantially all or any of its assets; **(m)** Mortgagor files, or becomes the subject of, a petition in bankruptcy, or upon the commencement of any proceeding or action under any bankruptcy laws, insolvency laws, relief of debtors laws, or any other similar law affecting Mortgagor, provided however, that Mortgagor shall have sixty (60) days from the filing of any involuntary petition in bankruptcy to have the same discharged and dismissed; **(n)** the Mortgaged Property becomes subject to **(1)** any tax lien which is superior to the lien of the Mortgage, other than a lien for local real estate taxes and assessments not due and payable or **(2)** any mechanic's, materialman's, or other lien which is, or is asserted to be, superior to the lien of the Mortgage and such lien shall remain undischarged for thirty (30) days, **(o)** Mortgagor fails to promptly cure any violations of laws or ordinances affecting or which may be interpreted to affect the Mortgaged Property; **(p)** in the event of any material adverse change in the financial condition of Mortgagor; or **(q)** any of the aforementioned events occur with respect to any Guarantor.

## ARTICLE THREE: REMEDIES

In the event that an Event of Default or default shall have occurred, the remedies available to Mortgagee include, but are not limited to, any and all rights and remedies available hereunder, any and all rights and remedies available at law, in equity, or by statute. Without limiting the foregoing, the rights and remedies available to Mortgagee shall include, but not be limited to, any one or more of the following:

**3.01 Acceleration of Maturity.** If an Event of Default shall have occurred, Mortgagee may, at its option, declare without demand or notice all of the outstanding Indebtedness to be due and payable immediately, and upon such declaration such Indebtedness shall immediately become and be due and payable without demand or notice.

**3.02 Mortgagee's Right to Enter and Take Possession.** If an Event of Default shall have occurred, Mortgagor, upon demand on Mortgagee, shall forthwith surrender to Mortgagee the actual possession of the Mortgaged Property and Mortgagee itself, or by such officers or agents as it may appoint, may enter and take possession of the Mortgaged Property, collect and receive the rents and income therefrom, and to apply so much of said rents and income as may be required in the necessary expenses of running said Premises, including reasonable attorneys' fees, management agents' fees, and if the Mortgagee manages the Premises with its own employees, an amount equal to the customary management agents' fees charged for similar property in the area where the Premises are located, and to apply the balance of said rents and income to the payment of the amounts due upon said Note, or in payment of taxes assessed against the Premises, or both. And for this purpose, and in case of such default, the Mortgagor hereby assigns, transfers and sets over to the Mortgagee the rents and income accruing from said Premises. Nothing contained in the foregoing provisions shall impair or affect any right or remedy which the Mortgagee might now or hereafter have, were it not for such provisions, but the rights herein given shall be in addition to any others which the Mortgagee may have hereunder.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 25 of 40
CFN: 20210436865 BOOK 32572 PAGE 3767

Page **14** of **23**

**3.03 Receiver.** If an Event of Default shall have occurred, Mortgagee, to the extent permitted by law and without regard to the value or occupancy of the security, shall be entitled to apply for the appointment of a receiver of the rents and profit of the Mortgaged Property without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Mortgaged Property as security for the amounts due Mortgagee, or the solvency of any person or limited liability company liable for the payment of such amounts.

**3.04 Waiver of Appraisement, Valuation, Stay, Exemption, and Redemption Laws, etc.; Marshaling.** Mortgagor agrees to the full extent permitted by law that after an Event of Default neither Mortgagor nor anyone claiming through or under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, exemption, moratorium, or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage, and Mortgagor, for itself and all who may at any time claim through or under it, hereby waives, to the full extent that it may lawfully so do, any and all right to have the assets comprising the Mortgaged Property marshaled upon any foreclosure hereof.

**3.05 Suits to Protect the Property.** Mortgagee shall have the power and authority to institute and maintain any suits and proceedings as Mortgagee may deem advisable in order to **(a)** prevent any impairment of the Mortgaged Property, **(b)** foreclose this Mortgage, **(c)** preserve and protect its interest in the Mortgaged Property, and **(d)** to restrain the enforcement of, or compliance with, any legislation or other governmental enactment, rule, or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order might impair the security hereunder or be prejudicial to Mortgagee's interest.

**3.06 Proofs of Claim.** In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other judicial case or proceeding affecting Mortgagor, its creditors or its property, Mortgagee, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have its claims allowed in such case or proceeding for the entire Indebtedness at the date of the institution of such case or proceeding, and for any additional amounts which may become due and payable by Mortgagor after such date.

**3.07 Application of Monies by Mortgagee.** After the occurrence of an Event of Default, any monies collected or received by Mortgagee shall be applied in such priority as Mortgagee may determine in its sole and absolute discretion, to such matters including, but not limited to, the payment of compensation, expenses and disbursements of the agents, attorneys and other representatives of Mortgagee, to deposits for Impositions and Insurance and insurance premiums due, to the cost of insurance, Impositions, Assessments, and other charges and to the payment of the Indebtedness.

**3.08 No Waiver.** Notwithstanding any course of dealing or course of performance, neither failure nor delay on the part of Mortgagee to exercise any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.

**3.09 No Waiver of One Default to Affect Another.** No waiver of any Event of Default hereunder shall extend to or affect any subsequent or any other Event of Default then existing, or impair any rights, powers or remedies consequent thereon. If Mortgagee **(a)** grants forbearance or an extension of time for

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

the payment of any of the Indebtedness; **(b)** takes other or additional security for the payment thereof; **(c)** waives or does not exercise any right granted in the Note, this Mortgage or any other of the Loan Documents; **(d)** releases any part of the Mortgaged Property from the lien of this Mortgage or any other of the Loan Documents or releases or any party liable under the Note; **(e)** consents to the filing of any map, plat or replat of the Premises; **(f)** consents to the granting of any easement on the Premises; or **(g)** makes or consents to any agreement changing the terms of this Mortgage or subordinating the lien or any charge hereof, no such act or omission shall release, discharge, modify, change or affect the original liability under this Mortgage or otherwise of Mortgagor, or any subsequent purchaser of the Mortgaged Property or any part thereof or any maker, co-signer, endorser, surety or guarantor. No such act or omission shall preclude Mortgagee from exercising any right, power or privilege herein granted or intended to be granted in case of any Event of Default then existing or of any subsequent Event of Default nor, except as otherwise expressly provided in an instrument or instruments executed by Mortgagee, shall the lien of this Mortgage be altered thereby.

**3.10 Remedies Cumulative.** No right, power or remedy conferred upon or reserved to Mortgagee by the Note, this Mortgage or any other of the Loan Documents is exclusive of any other right, power and remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or under the Note or any other of the Loan Documents, or now or hereafter existing at law, in equity or by statute.

**3.11 Interest after Event of Default; Default Rate**. If an Event of Default shall have occurred, all sums outstanding and unpaid under the Note and this Mortgage shall, at Mortgagee's option, bear interest at the default rate set forth in the Note.

## ARTICLE FOUR: MISCELLANEOUS PROVISIONS

**4.01 Heirs, Successors and Assigns Included in Parties.** Whenever one of the parties hereto is named or referred to herein, the heirs, successors and assigns of such party shall be included and all covenants and agreements contained in this Mortgage, by or on behalf of Mortgagor or Mortgagee shall bind and inure to the benefit of their respective heirs, successors and assigns, whether so expressed or not.

**4.02 Addresses for Notices, etc.**

    **(a)** Any notice, report, demand or other instrument authorized or required to be given or furnished under this Mortgage shall be in writing, signed by the party giving or making the same, and shall be sent by certified mail, return receipt requested, as follows:

| | |
|---|---|
| **MORTGAGOR:** | MIAMI HAVANA DEVELOPMENT LLC<br>168 La Quinta Court, Holmdel, NJ 07733 |
| **Copy to:** | |
| **MORTGAGEE:** | Realty Capital Finance LLC<br>1790 Swarthmore Avenue, Lakewood, NJ 08701 |
| **Copy to:** | **LaRocca Hornik Rosen, et al** |

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 27 of 40
CFN: 20210436865 BOOK 32572 PAGE 3769

Page **16** of **23**

**Attn: Jonathan L. Hornik, Esq.**
**83 South Main Street, Suite 302**
**Freehold, NJ 07728**

**(b)** Either party may change the address to which any such notice, report, demand or other instrument is to be delivered or mailed, by furnishing written notice of such change to the other party, but no such notice of change shall be effective unless and until received by such other party.

**4.03 Headings.** The headings of the articles, sections, paragraphs and subdivisions of this Mortgage are for convenience of reference only, are not to be considered a part hereof and shall not limit or expand or otherwise affect any of the terms hereof.

**4.04 Provisions Subject to Applicable Laws; Severability** All rights, powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate any law and are intended to be limited to the extent necessary so that they will not render this Mortgage invalid or unenforceable. In the event that any of the covenants, agreements, terms or provisions contained in the Note, or in this Mortgage or in any other Loan Documents shall be deemed invalid, illegal or unenforceable in any respect by a court with appropriate jurisdiction, the validity of the remaining covenants, agreements, terms or provisions contained herein or in the Note or in any other Loan Documents shall be in no way affected, prejudiced or disturbed thereby.

**4.05 Modification.** This Mortgage, the Note, and all other Indebtedness are subject to modification. Neither this Mortgage, nor any term hereof, may be changed, waived, discharged or terminated orally, or by any action or inaction, but only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge, or termination is sought.

**4.06 Governing Law. THIS MORTGAGE IS MADE BY MORTGAGOR AND ACCEPTED BY MORTGAGEE IN THE STATE OF NEW JERSEY EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, PRIORITY, ENFORCEMENT AND FORECLOSURE OF THE LIENS AND SECURITY INTERESTS CREATED IN THE MORTGAGED PROPERTY UNDER THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED. TO THE FULLEST EXTENT PERMITTED BY THE LAW OF THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED, THE LAW OF THE STATE OF NEW JERSEY SHALL GOVERN THE VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS, AND THE DEBT OR OBLIGATIONS ARISING HEREUNDER (BUT THE FOREGOING SHALL NOT BE CONSTRUED TO LIMIT LENDER'S RIGHTS WITH RESPECT TO SUCH SECURITY INTEREST CREATED IN THE STATE WHERE THE MORTGAGED PROPERTY IS LOCATED).**

**4.07 Prejudgment Remedies. THE MORTGAGOR HEREBY REPRESENTS, COVENANTS, AND AGREES THAT THE PROCEEDS OF THE LOAN SECURED BY THIS MORTGAGE, AND EVIDENCED BY THE LOAN AGREEMENT, AND THE NOTE SHALL BE USED FOR GENERAL COMMERCIAL PURPOSES AND THAT SUCH LOAN IS A "COMMERCIAL TRANSACTION" AS DEFINED BY THE STATUTES OF THE STATE OF NEW JERSEY . THE**

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

**MORTGAGOR HEREBY WAIVES SUCH RIGHTS AS IT MAY HAVE TO NOTICE AND/OR HEARING UNDER ANY APPLICABLE FEDERAL OR STATE LAWS INCLUDING, WITHOUT LIMITATION, NEW JERSEY GENERAL STATUTES PERTAINING TO THE EXERCISE BY THE MORTGAGEE OF SUCH RIGHTS AS THE MORTGAGEE MAY HAVE INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO SEEK PREJUDGMENT REMEDIES AND/OR TO DEPRIVE THE MORTGAGOR OF OR AFFECT THE USE OF OR POSSESSION OR ENJOYMENT OF THE MORTGAGOR'S PROPERTY PRIOR TO THE RENDITION OF A FINAL JUDGMENT AGAINST THE MORTGAGOR. THE MORTGAGOR FURTHER WAIVES ANY RIGHT IT MAY HAVE TO REQUIRE THE MORTGAGEE TO PROVIDE A BOND OR OTHER SECURITY AS A PRECONDITION TO OR IN CONNECTION WITH ANY PREJUDGMENT REMEDY SOUGHT BY THE MORTGAGEE, AND WAIVES ANY OBJECTION TO THE ISSUANCE OF SUCH PREJUDGMENT REMEDY BASED ON ANY OFFSETS, CLAIMS, DEFENSES, OR COUNTERCLAIMS TO ANY ACTION BROUGHT BY THE MORTGAGEE. FURTHER, THE MORTGAGOR HEREBY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISAL, HOMESTEAD, EXEMPTION, STAY, REDEMPTION AND MORATORIUM LAWS.**

**4.08 Effects of Changes and Laws Regarding Taxation.** In the event of an enactment of any law deducting from the value of the Mortgaged Property any mortgage lien thereon, or imposing upon Mortgagee the payment of any or part of the Impositions, charges, or Assessments previously paid by Mortgagor pursuant to this Mortgage, or change in the law relating to the taxation of mortgages, debts secured by mortgages or Mortgagee's interest in the Mortgaged Property so as to impose new incidents of taxes on Mortgagee, then Mortgagor shall pay such Impositions or Assessments or shall reimburse Mortgagee therefor; provided that, however, if in the opinion of counsel to Mortgagee such payment cannot lawfully be made by Mortgagor, then Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Mortgage to be immediately due and payable without prior notice to Mortgagor, and Mortgagee may invoke any remedies permitted by applicable law.

**4.09 Purpose of Loan.** Mortgagor represents and warrants that the proceeds from this Loan are to be used solely for business and commercial purposes and not at all for any personal, family, household, or other noncommercial or farming or agricultural purposes. Mortgagor acknowledges that Mortgagee has made this Loan to Mortgagor in reliance upon the above representation. Said representation will survive the closing and repayment of the Loan.

**4.10 Duplicate Originals.** This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

**4.11 Usury Laws.** This Mortgage, the Note, and the other Loan Documents are subject to the express condition that at no time shall Mortgagor be obligated or required to pay interest on the debt at a rate which could subject the holder of the Note to either civil or criminal liability as a result of being in excess of the maximum interest rate permitted by applicable law. If, by the terms of this Mortgage, the Note, or any of the Loan Documents, Mortgagor is at any time required or obligated to pay interest on the debt at a rate in excess of such maximum rate, the rate of interest under the same shall be deemed to be immediately reduced to such maximum rate and the interest payable shall be computed at such

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 29 of 40
CFN: 20210436865 BOOK 32572 PAGE 3771

Page **18** of **23**

maximum rate and all prior interest payments in excess of such maximum rate shall be applied and shall be deemed to have been payments in reduction of the principal balance of the Note.

**4.12 Construction.** This Mortgage and the Note shall be construed without regard to any presumption or other rule requiring construction against the party causing this Mortgage and the Note to be drafted.

**4.13 Release of Mortgage.** If all of Mortgagor's obligations under the Loan Documents are paid in full in accordance with the terms of the Loan Documents and all amounts due under the Mortgage and accompanying loan documents are paid in full, no Default then exists hereunder and no Event of Default then exists under any other Loan Document, and if Mortgagor shall well and truly perform all of Mortgagor's covenants contained herein, then this conveyance shall become null and void and be released, and the Mortgaged Property shall be released to Mortgagor, at Mortgagor's request and expense.

**4.14 Entire Agreement.** This Mortgage, together with the other Loan Documents executed in connection herewith, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof and supersedes all prior proposals, negotiations, agreements, and understandings relating to such subject matter. In entering into this Mortgage, Mortgagor acknowledges that it is not relying on any representation, warranty, covenant, promise, assurance, or other statement of any kind made by the Mortgagee or by any employee or agent of the Mortgagee.

**4.15 Provisional Remedies:  Foreclosure And Injunctive Relief:**  Nothing shall be deemed to apply to limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or non-judicially against any real or personal property collateral, or to exercise judicial or non-judicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver) or (d) pursue rights against Borrower or any other party in a third party proceeding in action bought against Lender (including, but not limited to, actions in bankruptcy court).  Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding

**4.16 State Specific Provisions**.

1.        **Foreclosure.**  Mortgagee may institute an action to foreclose this Mortgage against the Mortgaged Property, or take such other action at law or in equity for the enforcement of this Mortgage and realization on the mortgage security or any other security herein or elsewhere provided for, as the law may allow, and may proceed therein to final judgment and execution for the entire unpaid balance of the principal debt, with interest at the rate stipulated in the Note to the date of default, and thereafter at the Default Rate specified in the Note, together with all other sums due by Mortgagor in accordance with the provisions of the Note and this Mortgage, including all sums which may have been loaned by Mortgagee to Mortgagor after the date of this Mortgage, and all sums which may have been advanced by Mortgagee for taxes, water or sewer rents, charges or claims, payments on prior liens, completion of construction of improvements, insurance or repairs to the Mortgaged Property, all costs of suit, together with interest at such Default Rate on any judgment obtained by Mortgagee from and after the date of any foreclosure sale until actual payment is made as of the full amount due Mortgagee, and reasonable attorneys' fees for collection, or Mortgagee may foreclose only as to the sum past due with interest and costs as above provided, without injury to this Mortgage or the

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 30 of 40
CFN: 20210436865 BOOK 32572 PAGE 3772

Page **19** of 23

displacement or impairment of the remainder of the lien thereof, and at such foreclosure sale the Mortgaged Property shall be sold subject to all remaining items of Indebtedness; and Mortgagee may again foreclose, in the same manner, as often as there may be any sum past due. In the event Mortgagee forecloses this Mortgage against the Mortgaged Property, Mortgagee may, at its option and in its sole and absolute discretion, assume all rights (but not the obligation unless consented to by Mortgagee) as owner of the Mortgaged Property, and to assume all rights and privileges of Mortgagor thereunder; or

2.       If the Indebtedness shall have become due and payable, whether by lapse of time or by acceleration, then and in every such case Mortgagor confer upon Mortgagee the authority and power to proceed to protect and enforce its rights by a suit or suits in equity or at law, either for the specific performance of any covenant or agreement contained herein or in the Loan Documents, or in aid of the execution of any power herein or therein granted, or for the foreclosure of this Mortgage by advertisement or action, or for the enforcement of any other appropriate legal or equitable remedy.

3.       If Mortgagee invokes the STATUTORY POWER OF SALE, Mortgagee shall mail a copy of a notice of sale to Mortgagor, and to other persons prescribed by applicable law, in the manner provided by applicable law. Mortgagee shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Mortgagee or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Mortgage; and (c) any excess to the person or persons legally entitled to it in accordance with the terms of this Mortgage.

**Acceleration; Remedies**. Mortgagee shall give notice to  Mortgagor prior to acceleration following Mortgagor's breach of any covenant or agreement in this Mortgage (other than the default event set forth in Section 2.01(h) of this Mortgage, unless applicable law requires such notice). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Mortgagor, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage and sale of the Property. The notice shall further inform Mortgagor of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Mortgagor to acceleration and sale. If the default is not cured on or before the date specified in the notice, Mortgagee at its option may require immediate payment in full of all sums secured by this Mortgage without further demand and those remedies permitted by applicable law may be invoked. Mortgagee shall be entitled to collect all expenses incurred in pursuing the remedies provided in this section, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**Future Advances**. Pursuant to the laws of the State of Florida, this Mortgage shall secure not only the existing Indebtedness evidenced by the Note, but also such future advances as may be made by Mortgagee to Mortgagor in accordance with the Note, this Mortgage, or any other Loan Document, whether or not such advances are obligatory or are to be made at the option of Mortgagee, or otherwise, as are made within twenty (20) years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage, and the total amount of Indebtedness that shall be so secured by this Mortgage may decrease or increase from time to time, provided that the total unpaid balance so secured at any one time shall not exceed a principal amount of **Three Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($356,250.00)** plus interest thereon and plus any disbursements made for the payment of

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 31 of 40
CFN: 20210436865 BOOK 32572 PAGE 3773

Page **20** of **23**

taxes, levies or insurance on the property covered by the lien of this Mortgage, together with interest on such disbursements. It shall be a default by Mortgagor under the terms of this Mortgage if Mortgagor, or its successors and assigns, shall record a notice limiting the maximum principal amount that may be secured by the lien of this Mortgage, which notice would have the effect of prohibiting Mortgagee from making future advances under this Mortgage to the full amount above set forth.

**Jurisdiction.** Mortgagor consents to the exclusive jurisdiction of the courts of the State of Florida and the Federal Courts located in Florida in any and all actions and proceedings whether arising hereunder or under any other agreement or undertaking, and irrevocably agrees to service of process by certified mail, return receipt requested, postage prepaid, to its address set forth herein or such other address as Mortgagor specifies to Mortgagee in writing.

**Venue.** Mortgagor agrees that venue for any action brought by Mortgagee under this Mortgage shall be Miami-Dade County, Florida. Venue under the Note and any other of the Loan Documents shall be at Mortgagee's option.

**Release.** Upon payment of all sums secured by this Mortgage, Mortgagee shall release this Mortgage. Mortgagor shall pay any recordation costs. Mortgagee may charge Mortgagor a fee for releasing this Mortgage, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**Attorneys' Fees.** As used in this Mortgage and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**Jury Trial Waiver.** The Mortgagor hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Mortgage or the Note.

NOW, THEREFORE, If the Note and any Indebtedness secured by this Mortgage shall be well and truly paid according to their tenor and if all the terms, covenants, conditions, and agreements of the Mortgagor contained herein and in the Note and Loan Documents, shall be fully and faithfully performed, observed, and complied with, then this mortgage deed shall be void, but shall otherwise remain in full force and effect.

*[No further text on this page; signatures appear on the following page]*

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Case 1:24-cv-20936-DPG   Document 1-1   Entered on FLSD Docket 03/11/2024   Page 32 of 40
CFN: 20210436865 BOOK 32572 PAGE 3774

Page **21** of **23**

**IN WITNESS WHEREOF**, Mortgagor has executed this Mortgage as of the June 01, 2021

Signed, Sealed, and Delivered in the Presence of:

MORTGAGOR
**MIAMI HAVANA DEVELOPMENT LLC**

Name: _____

By: _____

Name: _____

Name:   Alex Pavlovsky
Title:   Manager and Sole Member

STATE OF   _F<_     )
                       )ss.:
COUNTY OF   _Browu._/   )

I certify that on June _l_, 2021 Alex Pavlovsky came before me in person and stated to my satisfaction that he/she:

(a) made the attached instrument; and

(b) was authorized to and did execute this instrument on behalf of and as Manager and Sole Member of MIAMI HAVANA DEVELOPMENT LLC (the "Company"), the entity named in this instrument, as the free act and deed of the Company, by virtue of the authority granted by its operating agreement and member.

REID SANTIAGO
Notary Public - State of Florida
Commission # GG 112545
My Comm. Expires Sep 22, 2021
Bonded through National Notary Assn.

NOTARY PUBLIC

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Mortgage, Security Agreement And Fixture Filing

Page **22** of **23**

## SCHEDULE A
## PROPERTY DESCRIPTION

Lot 5, Block 2, High-School Park Tract, according to the map or plat thereof, as recorded in Plat Book 4, Page(s) 44, of the Public Records of Miami-Dade County, Florida.

Property address is commonly known as: 140 NW 60th Street, Miami, FL 33127

## SCHEDULE B
## PERMITTED ENCUMBRANCES

As outlined on Schedule B of the Lender's title policy.

EXHIBIT C

**MIAMI HAVANA DEVELOPMENT LLC**
**$356,250.00**
**June 01, 2021**

### COMMERCIAL GUARANTY

FOR VALUE RECEIVED, the undersigned **Alex Pavlovsky,** an individual, having an address at **168 La Quinta Court, Holmdel, NJ 07733** ("Guarantor") hereby unconditionally and absolutely guarantees the prompt payment and performance of a certain Commercial Promissory Note (the "Note") made **MIAMI HAVANA DEVELOPMENT LLC,** a Florida limited liability company  having its principal place of business at **168 La Quinta Court, Holmdel, NJ 07733** ("Borrower") dated **June 01, 2021**  in favor of **REALTY CAPITAL FINANCE LLC,** a New Jersey limited liability company having an address at **1790 Swarthmore Avenue, Lakewood, NJ 08701** ("Lender"), said Note being in the original principal amount of **Three Hundred Fifty Six Thousand Two Hundred Fifty and 00/100 dollars ($356,250.00)** and all monies coming due thereunder, or under any Mortgage or any other document granted to secure said Note (all of the foregoing hereinafter collectively referred to as the "Security Instruments") and any environmental indemnification agreement, and any other document executed in relation to and simultaneously with the Note (all of the foregoing hereinafter collectively referred to as the "Documents") (the said Note, Security Instruments, and Documents are hereinafter collectively referred to as the "Loan Documents"). The loan made by Lender to Borrower pursuant to the Note and the Loan Documents is referred to herein as the "Loan."

This Guaranty is intended to guaranty each payment of principal and interest due under said Note and all of the obligations set forth in the Loan Documents and the performance of the Borrower's obligations under the Loan Documents. This Guaranty also includes all costs of collection and attorneys' fees and all other costs, which are required to be paid under the Loan Documents.

**(1) Consent to Modifications.**  Guarantor consents to any change in the terms and conditions of the Loan Documents, including but not limited to, any change in the collateral provided in the Loan Documents or any change with respect to the parties who may be liable with respect to the Loan Documents, all without notice to or further assent by Guarantor. Guarantor is to remain bound upon this Guaranty, notwithstanding any such change or extension or release, substitution, exchange or other indulgence granted any maker of said Note. Guarantor hereby waives all defenses, counterclaims, or offsets which Guarantor might have by reason of any change in or to the Loan Documents or any release, exchange, surrender, or impairment of security, or any addition or release of any party liable with respect to the Loan Documents.

**(2) Default.**  Upon any default of Borrower in the payment or performance under any of the Loan Documents, the holder of the Note may enforce this Guaranty immediately against Guarantor without the necessity of any suit or action against Borrower or any other party and without resorting to and without regard to any collateral or any other guarantee or any other source of payment. In the event of default under any of the Loan Documents, Guarantor further agrees to pay all costs, without limitation, attorneys' fees, incurred or expended by the holder of the Note in the collection or attempted collection under this Guaranty and in realization of any lien or security interest securing amounts due hereunder, including, without limitation, those incurred as a result of the Note holder's participation in any proceeding involving Guarantor under the Federal Bankruptcy Code.

**(3) Delay or Omission No Waiver.**  No delay or omission in exercising any right hereunder shall operate as a waiver of such right or any other right; and a waiver one on occasion shall not be a bar to or waiver of any right on any other occasion.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Guaranty

**(4) Continuing Guaranty.**  This is a continuing guaranty which shall take effect on its delivery and shall remain in full force and effect and be binding upon Guarantor until the complete satisfaction of all of the obligations set forth in the Loan Documents.

**(5) Waiver.**  Guarantor hereby waives demand, presentment, protest, and notice of acceptance of this Guaranty by Lender, and of any loans made, extensions granted or other action taken in reliance hereon and all other demands and notices of any description in connection with this Guaranty, or under the Loan Documents.

**(6) Representations and Warranties.**

> **(a)**  Guarantor represents and warrants that Guarantor is deriving direct financial benefit from the loans evidenced by the Note.

> **(b)**  Guarantor further represents and warrants that Guarantor is not now insolvent and will not be rendered insolvent by the execution hereof or performance hereunder.

> **(c)**  There are no actions, suits or proceedings pending, or to the knowledge of the Guarantor, threatened against or affecting the Guarantor or the properties of the Guarantor before any court or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, if determined adversely to the Guarantor, would have a material adverse effect on the financial condition, properties or operations of the Guarantor.

> **(d)**  The most recent financial statements of the Guarantor, copies of which statements have been furnished to the Lender, fairly present the financial condition of the Guarantor as of such dates in accordance with generally accepted accounting principles applied on a consistent basis, and since the date of each of such financial statements, there has been no material adverse change in such condition or operations.

> **(e)**  Guarantor is not a party to any indenture, loan or credit agreement or any lease or other agreement or instrument or subject to any charter or other restriction which would have a material adverse effect on the ability of the Guarantor to carry out Guarantor's obligations under this Guaranty.

> **(f)**  No information, exhibit or report furnished by the Guarantor to the Lender in connection with the negotiation of this Guaranty contained as of the date thereof, or, if there be no such date, the date of furnishing thereof, any untrue statements of a material fact and do not omit to state any material fact necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading.

> **(g)**  This Guaranty constitutes the valid and legally binding obligation of the Guarantor, enforceable in accordance with its terms, except as the enforcement may be limited by bankruptcy, insolvency or similar laws affecting the enforcement of creditor's rights generally.

> **(h)**  All authorizations, consents and approvals of governmental bodies or agencies required in connection with the execution and delivery of this Guaranty, or in connection with the performance of the Guarantor's obligations hereunder, if any, have been obtained as required hereunder or by law.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Guaranty

**(7) Financial Information.** Guarantor shall provide all financial information reasonably requested by Lender. Guarantor shall provide all financial information in such format and containing such information required by Lender.

**(8) Dealing with Borrower and Others.** Without incurring responsibility to Guarantor and without impairing or releasing the liabilities and obligations of Guarantor hereunder, Lender may, at any time and from time to time, without the consent of or notice to Guarantor, upon any terms or conditions and in whole or in part shall have the right to:

      **(a)** sell, exchange, release, surrender, realize upon or otherwise deal with in any manner and in any order, any property by whomsoever at any time pledged, assigned, mortgaged or in which a security interest is given to secure, or howsoever securing, the liabilities and obligations of Borrower;

      **(b)** exercise or refrain from exercising any rights against Borrower or other persons or entities (including Guarantor) or against any security given by Borrower or other persons or entities (including Guarantor), or otherwise act or refrain from acting;

      **(c)** settle or compromise any liabilities and obligations of Borrower to Lender, dispose of any security therefor, with or without consideration, or any liability incurred directly or indirectly in respect thereof or hereof, and may subordinate the payment of all or any part thereof to the payment of any liabilities and obligations of Borrower (whether due or not) to creditors of Borrower other than Lender and Guarantor; and

      **(d)** apply any sums by whomsoever paid and howsoever realized for the benefit of Borrower to any liabilities and obligations of Borrower, subject to the provisions of the Loan Documents.

**(9) Subrogation.** So long as any of the Note remains unpaid, any liabilities and obligations of Borrower exist under the Loan Documents or Guarantor under this Agreement, Guarantor waives any and all rights of indemnification, reimbursement, subrogation or contribution which Guarantor may otherwise have now or hereafter as a matter of law against Borrower.

**(10) Obligations Absolute.** The liabilities and obligations of Guarantor hereunder shall be absolute and unconditional irrespective of **(i)** any lack of validity or enforceability of the Note or any other Loan Document; **(ii)** the insolvency of, or the voluntary or involuntary bankruptcy, assignment for the benefit of creditors, reorganization or other similar proceedings affecting Borrower any other guarantor or any of their assets; or **(iii)** any other circumstance or claim which otherwise might constitute a defense available to, or a discharge of, Borrower with respect to its liabilities and obligations under the Loan Documents, or of Guarantor with respect to this Agreement.

**(11) No Impairment.** No invalidity, irregularity or unenforceability of all or any part of any liabilities and obligations of Borrower or the impairment or loss of any security therefor, whether caused by any actions or inactions of Lender, or otherwise, shall affect, impair or be a defense to this Agreement.

**(12) Joint and Several Liability.** The liability of each Guarantor under this Agreement shall be joint and several with that of each and every other Guarantor.

**(13) Rights Cumulative.** All rights, powers and remedies afforded to Lender by reason of this Agreement are separate and cumulative remedies, and no one of such remedies whether or not exercised by Lender shall be deemed to exclude any of the other remedies available to Lender nor prejudice the availability of any other legal or equitable remedy which Lender may have with respect to the Loan.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Guaranty

**(14) Commercial Transaction.** GUARANTOR HEREBY REPRESENTS, COVENANTS AND AGREES THAT THE LOAN IS A "COMMERCIAL TRANSACTION" AS DEFINED BY THE STATUTES OF THE STATE OF NEW JERSEY. THE GUARANTOR HEREBY WAIVES SUCH RIGHTS AS IT MAY HAVE TO NOTICE AND/OR HEARING UNDER ANY APPLICABLE FEDERAL OR STATE LAWS INCLUDING, WITHOUT LIMITATION, NEW JERSEY GENERAL STATUTES, PERTAINING TO THE EXERCISE BY THE LENDER OF SUCH RIGHTS AS THE LENDER MAY HAVE INCLUDING, BUT NOT LIMITED TO, THE RIGHT TO SEEK PREJUDGMENT REMEDIES AND/OR TO DEPRIVE THE GUARANTOR OF OR AFFECT THE USE OF OR POSSESSION OR ENJOYMENT OF THE GUARANTOR'S PROPERTY PRIOR TO THE RENDITION OF A FINAL JUDGMENT AGAINST THE GUARANTOR. THE GUARANTOR FURTHER WAIVES ANY RIGHT IT MAY HAVE TO REQUIRE THE LENDER TO PROVIDE A BOND OR OTHER SECURITY AS A PRECONDITION TO OR IN CONNECTION WITH ANY PREJUDGMENT REMEDY SOUGHT BY THE LENDER, AND WAIVES ANY OBJECTION TO THE ISSUANCE OF SUCH PREJUDGMENT REMEDY BASED ON ANY OFFSETS, CLAIMS, DEFENSES OR COUNTERCLAIMS TO ANY ACTION BROUGHT BY THE LENDER. FURTHER, THE GUARANTOR HEREBY WAIVES, TO THE EXTENT PERMITTED BY LAW, THE BENEFITS OF ALL PRESENT AND FUTURE VALUATION, APPRAISAL, HOMESTEAD, EXEMPTION, STAY REDEMPTION AND MORATORIUM LAWS.

**(15) Successors and Assigns.** This Guaranty shall inure to the benefit of Lender, and its successors and assigns, and it shall be binding upon Guarantor and the executors, administrators, heirs, successors, and assigns, of each of the Guarantor.

**(16) Governing Law.** This Guaranty shall be governed and construed in accordance with the laws of the State of New Jersey. The undersigned agrees to submit to personal jurisdiction in the State of New Jersey in any action or proceeding arising out of this Guaranty and, in furtherance of such agreement, the undersigned hereby agrees and consents that without limiting other methods of obtaining jurisdiction, personal jurisdiction over the undersigned in any such action or proceeding may be obtained within or without the jurisdiction of any court located in New Jersey and that any process or notice of motion or other application to any such court in connection with any such action or proceeding may be served upon the undersigned by registered mail to or by personal service at the last known address of the undersigned, whether such address be within or without the jurisdiction of any such court.

**(17) Jury Trial Waiver.** GUARANTOR AGREES THAT ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY THE GUARANTOR OR LENDER ON OR WITH RESPECT TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. GUARANTOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, THE UNDERSIGNED WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. GUARANTOR ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS GUARANTY AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS GUARANTY.

**(18) Headings.** The descriptive headings of the several sections of this Guaranty are inserted for convenience only and shall not be deemed to affect the meaning or construction of any of the provisions

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Guaranty

hereof.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Guaranty

**IN WITNESS WHEREOF**, the undersigned has executed this Guaranty as of June 01, 2021

Signed, Sealed, and Delivered in the Presence of:

Name: _Reid Santiago_

Name: _Jones Santiago_

**GUARANTOR**

Alex Pavlovsky, individually

STATE OF     FL     )
                     ) ss.:
COUNTY OF    Broward   )

On May 1, 2021 before me personally came Alex Pavlovsky, who being by me duly sworn, did depose and say that he/she signed this instrument as his/her voluntary act and deed.

NOTARY PUBLIC

REID SANTIAGO
Notary Public - State of Florida
Commission # GG 112545
My Comm. Expires Sep 22. 2021
Bonded through National Notary Assn.

Copyright 2019 LaRocca, Hornik, Rosen & Greenberg LLP
Commercial Guaranty